UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:09-CV-488-BR

| | |
|---|---|
| CONTROVERSY MUSIC, DIRTY DRE, MUSIC, LIL VIDAL MUSIC, CHRYSALIS MUSIC, NAKED UNDER MY CLOTHES, UNIVERSAL MUSIC CORP., EMI APRIL MUSIC INC., BLACK FOUNTAIN MUSIC, AND TANK 1176 MUSIC,<br>            Plaintiffs<br>v.<br><br>JOSEPH NATHANIEL MASON,<br>            Defendant. | ORDER |

This case comes before the court on Plaintiffs' Motion for Default Judgment against Defendant for violations of the Copyright Act, 17 U.S.C. § 101, *et seq.* The Clerk entered default against Defendant on 3 March 2010. Defendant filed no response with the court, and the matter is now ripe for disposition.

**I. BACKGROUND**

Plaintiffs are the exclusive copyright owners of the three musical recordings – "Purple Rain", "Yo, Excuse Me Miss", and "Please Don't Go" – specified in this case. Compl. ¶¶ 3, 9 & Ex. A. Plaintiffs filed their complaint on 10 November 2009, alleging that Defendant infringed upon the specified copyrights by giving unauthorized public performances of their works on both specific occasions and in an ongoing manner at Club International, owned by Defendant. Compl. ¶¶ 2, 4-5, 10-11 & Ex. A. Plaintiffs allege that Defendant's actions constituted willful violation of their rights, because the American Society of Composers, Authors, and Publishers (ASCAP), of which Plaintiffs are members, advised Defendant several times of his potential liability for

copyright infringement. Compl. ¶ 12. By way of the instant motion, Plaintiffs seek statutory damages of $5,000 for each of the three copyright infringements, reasonable costs and attorney's fees in the amount of $2,650.71, and a permanent injunction against Defendant prohibiting him from publicly performing any of the copyrighted materials in ASCAP's repertory without authorization. Pls.' Mot. Default J. at 1; Pls.' Br. at 6, 10; Allen Decl. ¶ 6.

## II. ANALYSIS

Defendant's lack of response to the allegations in the complaint against him constitutes not only default but also admission of the truth of those allegations. *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008). However, the court must determine whether the complaint's allegations of fact, when presumed true, state a proper claim for relief. *Capitol Records, LLC v. McEwan*, No. 5:08-CV-00473-BR, 2009 U.S. Dist. LEXIS 2073, *3 (E.D.N.C. Jan. 13, 2009) (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986)).

### A. Liability

To establish copyright infringement via unauthorized public performance of a work, a plaintiff must show five elements:

> (a) the originality and authorship of the compositions involved;
> (b) compliance with the formalities required to secure a copyright under Title 17, United States Code;
> (c) plaintiffs' ownership of the copyrights of the relevant compositions;
> (d) defendant['s] public performance of the compositions; and
> (e) defendant['s] failure to obtain permission from the plaintiffs or their representatives for such performance.

*Odnil Music, Ltd. v. Katharsis, LLC*, No. Civ. S-05-0545 WBS JBM, 2006 U.S. Dist. LEXIS 65813, *11-12 (E.D. Cal. July 21, 2006) (citing *Jobete Music Co., Inc. v. Johnson Communications, Inc.*, 285 F. Supp. 2d 1077, 1082 (S.D. Ohio 2003)); *see also Tempo Music,*

*Inc. v. Myers*, 407 F.2d 503, 505 (4th Cir. 1969).

In this case, Plaintiffs contend that the three musical works Defendant infringed are original compositions created and written by the specified persons. Compl. ¶ 6 & Ex. A. Plaintiffs also assert that they hold valid Certificates of Registration from the Register of Copyrights for those works, including at the time the infringements took place. Compl. ¶¶ 9, 13 & Ex. A. Furthermore, Plaintiffs allege that Defendant performed Plaintiffs' copyrighted works for the entertainment of patrons at his establishment on distinct occasions and in an ongoing manner without Plaintiffs' permission. Compl. ¶¶ 2, 5, 10-11 & Ex. A. These factual allegations are sufficient to satisfy all five elements of the claim, and, accordingly, default judgment against Defendant is warranted.

### B. Damages, Costs, and Attorney's Fees

Plaintiffs seek statutory rather than actual damages. Pls.' Mot. Default J. at 1. "[T]he copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). The Supreme Court has recognized that courts have wide discretion in fixing damage amounts and that the nature of the Copyright Act allows statutory damages to serve as a deterrent rather than merely a compensatory function. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-33 (1952).

> [A] a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.

*Id.* at 233. In determining an award of statutory damages, a court should consider "(1) the

3

expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues lost by the plaintiffs; and (3) whether the infringement was willful and knowing or whether it was accidental or innocent." *Arista Records LLC v. Gaines*, 635 F. Supp. 2d 414, 418 (E.D.N.C. 2009) (quoting *Jasperilla Music Co., MCA, Inc. v. Wing's Lounge Assoc.*, 837 F. Supp. 159, 161 (S.D.W.Va. 1993)) (internal quotation marks omitted).

Here, since June 2002, ASCAP has repeatedly attempted to secure a licensing agreement with Defendant. Jones Decl. ¶ 7. Defendant saved $5,365.63 in licensing fees from June 2002 through 2010 by not obtaining a proper license from ASCAP. *Id.* ¶ 10. Defendant's infringement cost ASCAP $1,916.64 to obtain evidence in support of this suit. *Id.* It is impossible to determine exactly how much profit Defendant reaped from his infringement, but these figures give some indication of how much he saved and how much Plaintiffs have lost so far. It is impossible to determine how much revenue Plaintiffs might lose in the future given that Defendant's infringement is continuous and ongoing.

Willfulness may be predicated on reckless disregard for copyright holders' rights or actual or constructive knowledge that one's actions constitute infringement. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799-800 (4th Cir. 2001). Between June 2002 and September 2009, Defendant received at least fifteen letters from ASCAP explaining his need for a license and his potential liability as an infringer. Jones Decl., Ex. A. Defendant also received at least five phone calls and two personal visits from ASCAP representatives attempting to secure a licensing agreement. *Id.* Defendant repeatedly told ASCAP that his performers were responsible for obtaining licenses and that his DJ was licensed. *See id.* On both evenings when ASCAP's independent investigator visited Defendant's establishment, however, Defendant

4

himself was acting as DJ. Jones Decl., Ex. B. Based upon ASCAP's contacts with Defendant, the court finds Defendant's infringement was willful. *See Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (N.D. Ill. 1987) ("[D]efendants must not be able to sneer in the face of copyright owners and copyright laws. Rather, defendants must 'be put on notice that it costs less to obey the copyright laws than to violate them.'" (citation omitted)).

Courts often award statutory damages ranging from two to three times the amount that the defendant saved by not paying licensing fees. *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 508-09 (E.D. Va. 2009) (citing, *inter alia*, *Girlsongs v. 609 Indus., Inc.*, 625 F. Supp. 2d 1127, 1131-32 (D. Colo. 2008) (in turn citing many cases and awarding slightly less than three times the amount of license fees saved)) (awarding slightly more than twice the amount of license fees saved). Given Defendant's willful infringement yet considering the fact that he is the sole proprietor of a relatively small establishment, a statutory damages award of $4,000 per song infringed is appropriate in this case, amounting to a total statutory damages award of $12,000, or slightly more than twice what Defendant would have paid in licensing fees to ASCAP.

Plaintiffs also ask the court to order Defendant to pay their court costs and reasonable attorney's fees. Pls.' Mot. Default J. at 1. "[T]o determine whether an award of attorney's fees should be made to a party under 17 U.S.C. § 505, the Fourth Circuit has articulated four factors for consideration: 1) the motivation of the parties, 2) the objective reasonableness of the legal and factual positions advanced, 3) the need in particular circumstances to advance considerations of compensation and deterrence, and 4) any other relevant factor presented." *EMI April Music, Inc.*, 618 F. Supp. at 512 (citing *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 30 F.3d 503, 505 (4th Cir. 1994)).

5

The court finds no reason to believe Plaintiffs are ill-motivated in bringing this suit, and in fact they delayed bringing suit for eight years while ASCAP attempted to secure a licensing agreement with Defendant. Defendant's refusal to consider ASCAP's offers, make other appropriate licensing arrangements, or heed ASCAP's warnings against his infringement forced Plaintiffs to incur expense to obtain evidence and bring suit to vindicate their lawful rights. The need for deterrence in this case also is strong given Defendant's apparent intent to continue infringing Plaintiffs' copyrights. The court finds that all relevant factors weigh in favor of awarding attorney's fees and costs to Plaintiffs. After reviewing the declaration and exhibit submitted by Plaintiffs' attorney, Allen Decl., the court finds that the attorney's fees and costs requested are reasonable. Accordingly, Defendant shall pay Plaintiffs' attorney's fees and costs in the amount of $2,650.71.

**C. Injunctive Relief**

Finally, Plaintiffs request that the court issue a permanent injunction against Defendant to restrain his further infringement of copyrighted works belonging to either Plaintiffs or any other ASCAP member. Pls.' Mot. Default J. at 1.

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). The Fourth Circuit has stated that "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC v.*

6

*Galloway*, 492 F.3d 532, 544 (4th Cir. 2007). In this case, once an unauthorized public performance of Plaintiffs' compositions takes place, it cannot be undone, erased, or destroyed – representing the very essence of irreparability. Although some degree of monetary damage calculation is possible, as aforementioned, it would be impossible to calculate potential future damages in light of Defendant's apparent intent to continue infringing. When "a substantial amount of speculation and guesswork . . . renders the [calculation of future damages and profits] difficult or impossible," it weighs in favor of finding the second prerequisite to injunctive relief satisfied. *Id.*

The balance of hardships between the parties also weighs in favor of allowing the injunction. It is unreasonable to expect or require Plaintiffs to continue hiring independent investigators to monitor Defendant's establishment and discover whether he is continuing to infringe upon Plaintiffs' copyrighted works. On the other hand, Defendant will be able to publicly perform Plaintiffs' copyrighted works as long as he pays the licensing fees to do so. The public interest in this case also weighs substantially in favor of preserving copyright holders' lawful rights, and no public interest will be served by allowing Defendant to continue his infringing activities. Accordingly, the four prerequisites to permanent injunctive relief are satisfied in this case, and the court finds in its discretion that the requested injunction is entirely warranted.

### III. CONCLUSION

Plaintiffs' Motion for Default Judgment is hereby GRANTED. It is hereby ORDERED, ADJUDGED, and DECREED that:

1. Plaintiffs have and recover of Defendant Joseph Nathaniel Mason the sum of Twelve

Thousand Dollars ($12,000), with interest of 0.30 % per annum from the entry of judgment until paid.

2. Defendant pay Plaintiffs' reasonable attorneys fees and costs in the amount of Two Thousand, Six Hundred Fifty Dollars and Seventy-One Cents ($2,650.71).

3. Defendant and all persons acting under the direction, control, permission, or authority of Defendant are hereby permanently enjoined and restrained from publicly performing any of the copyrighted musical compositions in the ASCAP repertory, in any place or establishment or by any means, including but not limited to the public performance of such compositions at Defendant's establishment, Club International, controlled, operated, or conducted by Defendant, and from aiding or abetting the public performance of such compositions in any such place, or otherwise, unless duly authorized to do so.

This 24 June 2010.

_____
W. Earl Britt
Senior U.S. District Judge